# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People ex rel. Madigan v. United Construction of America, Inc.*, 2012 IL App (1st) 120308

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois, Plaintiff-Appellant, v. UNITED CONSTRUCTION OF AMERICA, INC.; SKYWAY BUILDERS #1, INC.; UNITED RESIDENTIAL SERVICES, INC.; HARBOR FINANCIAL GROUP, LTD.; MARK DIAMOND; UNITED RESIDENTIAL SERVICES & REAL ESTATE, INC.; and OSI FINANCIAL SERVICES, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-12-0308 |
| Filed | November 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In order to state a claim that defendants violated section 2 of the Consumer Fraud Act, the Attorney General must allege that defendants misrepresented a material fact with the intent that others rely on the misrepresentation, but under section 7 of the Act, a showing of proximate cause and harm is required only for private actions seeking damages, not actions by the Attorney General. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-33398; the Hon. Lee Preston, Judge, presiding. |

| | |
|---|---|
| Judgment | Certified questions answered. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Jane Elinor Notz, Assistant Attorney General, of counsel), for appellant. |
| | Dennis E. Both, of Brown Udell Pomerantz & Delrahim, Ltd., of Chicago, for appellees. |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion. |
| | Presiding Justice Harris concurred in the judgment and opinion. |
| | Justice Quinn specially concurred, with opinion. |

## OPINION

¶ 1    This appeal presents two certified questions that deal with the pleading requirements for an action by the Attorney General under the Illinois Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 *et seq.* (West 2010)). The first question concerns the pleading requirements for a claim under section 2 of the Act (815 ILCS 505/2 (West 2010)), and the second concerns the pleading requirements for obtaining injunctive and other relief under section 7 (815 ILCS 505/7 (West 2010).

¶ 2    We do not need to explain much about the background of this case in order to answer the certified questions. Defendants are all involved in some fashion with the mortgage and home repair industries in Illinois. The complaint alleges that defendants approach unsophisticated homeowners, usually elderly ones from predominantly African-American communities, and offer to provide home repair services and financing in order to pay for those services. If the homeowners decline, defendants instead offer to provide mortgage refinancing services. The problem with this business model, the complaint alleges, is that defendants then push the homeowners into high-risk and unaffordable financing arrangements and steer the resulting home-repair contracts to companies that, among other things, fail to complete the work in a professional manner, if at all. The complaint alleges that this is all accomplished through a variety of deceptive and unfair business practices.

¶ 3    To combat this, the Attorney General filed a two-count complaint against defendants in the circuit court. Count I (which is the only count that concerns us here) alleged that defendants' actions violated sections 2, 2B, and 2Q of the Act (815 ILCS 505/2, 2B, 2Q (West 2010)) and sought an injunction prohibiting them from future involvement in the mortgage and home-repair industries. The circuit court dismissed this count, citing among other things the Attorney General's failure to plead that defendants had misrepresented any material facts with the intent that homeowners rely on them, or that any allegedly unlawful

act had proximately harmed homeowners. After several unsuccessful motions for reconsideration and clarification, the Attorney General asked to certify the two questions at issue here.

¶ 4 We review the issues presented by a certified question *de novo*. See *Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350, ¶ 9. The scope of our review "is strictly limited to the certified question," and "our task is to answer the certified question rather than to rule on the propriety of any underlying order." *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 998 (2004). But see *id.* at 998-99 (noting that "[i]n the interests of judicial economy and reaching an equitable result, however, a reviewing court may go beyond the certified question and consider the appropriateness of the order giving rise to the appeal"). Both certified questions deal with statutory construction, and the rules of statutory construction are well known:

> "The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. [Citation.] The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. [Citation.] Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction. [Citation.] However, if the statutory language is ambiguous or unclear, this court may look beyond the act's language to ascertain its meaning. [Citation.] A statute is ambiguous if it is capable of more than one reasonable interpretation. [Citation.] The construction of a statute is a question of law that we review *de novo*." *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11.

¶ 5 The first question is:

> "Whether the Attorney General must plead that the defendant misrepresented a material fact with the intent that others rely on the misrepresentation to state a claim under [section 2], or does the [Act] require a showing of intended reliance only for allegations that the defendant concealed, suppressed, or omitted a material fact."

This question seeks to clarify the elements of a claim under section 2 of the Act (815 ILCS 505/2 (West 2010)), when that claim is based on a defendant's alleged misrepresentation of a material fact. Section 2 reads:

> "Unfair methods of competition and unfair or deceptive acts or practices, *including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact,* or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act [15 U.S.C. § 45]." (Emphasis added.) 815 ILCS 505/2 (West 2010).

The emphasized language above is the portion of section 2 at issue.

¶ 6 The Attorney General's primary contention is that the grammatical structure of section

2 indicates that a claim based on misrepresentation of a material fact is distinct from, for example, a claim based on omission of a material fact. According to the Attorney General's interpretation, a section 2 claim that is premised on either the concealment, suppression, or omission of any material fact cannot succeed unless there is also evidence that a defendant intended for a consumer to rely on that material fact. In contrast, intent to induce reliance on a material fact would be irrelevant if a section 2 claim is based on deception, fraud, false pretense, false promise, or misrepresentation. Under the Attorney General's reading, section 2 essentially contains two different classes of unlawful deceptive practice: one where intent to induce reliance is an element of the claim, and one where it is not. Although not fully articulated in the Attorney General's brief, her position is based on the maxim *expressio unius est exclusio alterius*, which "is an aid of statutory interpretation meaning 'the expression of one thing is the exclusion of another.' [Citation.]" *Metzger v. DaRosa*, 209 Ill. 2d 30, 44 (2004) ("Where a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions ***." (Internal quotation marks omitted.)). The Attorney General contends that because the "intent" provision of section 2 expressly refers to the "intent that others rely upon the *concealment, suppression or omission* of such material fact," then we should read the statute to mean that intent is *not* a necessary element when other types of deceptive practices such as misrepresentation are at issue.

¶ 7        This is not, however, how the supreme court has interpreted the plain language of section 2. In dismissing this count of the complaint, the circuit court relied on *People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 492 (1992), in which the supreme court stated that "[i]n order to state a claim under the [Act], a complaint must set forth specific facts which show that defendants misrepresented a material fact in the conduct of a trade or commerce, with the intent that others would rely on such misrepresentation." The Attorney General acknowledges that this statement is directly contrary to her position but contends that this statement is only *dicta* and is inconsistent with the plain language of section 2.

¶ 8        While it is certainly true that *Hartigan*'s statement was not essential to the disposition of the case and therefore qualifies as *dicta* (see *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993)), *Hartigan* is consistent on this point with other supreme court cases that have expressly interpreted section 2. For example, in *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534 (1992), which was decided on the very same day as *Hartigan*, the supreme court differentiated between the elements of a common-law fraud claim and a statutory fraud claim under section 2, holding that "[o]n its face, it appears that all a plaintiff need prove to establish a violation of [section 2] is: (1) a deceptive act or practice, (2) *intent on the defendants' part that plaintiff rely on the deception*, and (3) that the deception occurred in the course of conduct involving trade or commerce. Significantly, [section 2] does not require actual reliance." (Emphasis added.) *Id.* at 542. The supreme court reiterated these same elements in *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996). It also clarified that a "[p]laintiff's reliance is not an element of statutory consumer fraud [citation], but a valid claim must show that the consumer fraud proximately caused plaintiff's injury [citation]. Furthermore, a complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud." *Id.* at 501.

¶ 9        The problem in this case appears to stem from the mistaken impression that a section 2

claim based on a misrepresentation is a different cause of action than one based on, for example, an omission. But based on the supreme court's articulation of the elements of a cause of action under section 2 in *Siegel*, *Connick*, and *Hartigan*, they are not. Misrepresentation, omission, and all of the other acts listed in section 2 are merely nonexclusive examples of a broad range of "[u]nfair or deceptive acts or practices," which are what section 2 specifically prohibits. 815 ILCS 505/2 (West 2010). For example, a plaintiff might successfully plead the first element of a section 2 claim by demonstrating that a defendant misrepresented a material fact, but that same element is also satisfied by demonstrating that a defendant omitted a material fact or made a false promise. The element is satisfied in either instance because misrepresentation and omission are both deceptive acts. Regardless of what kind of deceptive act a defendant allegedly committed, a plaintiff must also plead the intent element and the trade-or-commerce element. In this case, it makes no difference that the Attorney General's claim is based on a misrepresentation because a misrepresentation is only one kind of deceptive act within the meaning of section 2. In order to successfully state a claim under section 2 based on a misrepresentation, the Attorney General must still show that defendants intended for homeowners to rely on that particular deceptive act and that defendants did so in the course of trade or commerce.

¶ 10    This brings us to the second question, which is:

"Whether the Attorney General must plead that the defendant's unlawful act proximately caused harm to state a claim for injunctive and other relief under [section 7], or does the [Act] require a showing of proximate cause and harm only for private actions seeking damages."

¶ 11    The certified question refers to a "claim" under section 7, but this is a somewhat misleading label. Section 7(a) states:

"Whenever the Attorney General or a State's Attorney has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by this Act to be unlawful, and that proceedings would be in the public interest, he or she *may bring an action* in the name of the People of the State against such person to restrain by preliminary or permanent injunction the use of such method, act or practice." (Emphasis added.) 815 ILCS 505/7(a) (West 2010).

As can be seen from the plain language of the statute, section 7(a) does not create a free-standing cause of action but instead merely authorizes the Attorney General to file for an injunction against a defendant who has violated some other, substantive provision of the Act.

¶ 12    The source of the confusion in this case is conceptual, so it is helpful to consider the overall framework of the Act in answering the second question. The cases often speak of a singular "claim" for consumer fraud or deceptive business practices under the Act, and that is true: a violation of the Act constitutes the tort of statutory fraud. Yet there are nearly 70 different ways to violate the Act, which are codified in sections 2 through 2III. See 815 ILCS 505/2 to 2III (West 2010). Moreover, each of these sections has different elements. For example, a successful claim under section 2 requires proof that, among other things, a defendant intended for a plaintiff to rely on a deceptive act, as we discussed above. But this element is not present in claims under other sections. For example, section 2B (815 ILCS

505/2 (West 2010)), which is also a section that the Attorney General alleges was violated in this case, deals with merchants who sell directly to consumers in the consumers' home, and the section allows customers to return the goods or cancel the contract within three days. A seller violates section 2B if the seller fails to do any of a number of things related to the cancellation. See, *e.g.*, 815 ILCS 505/2B(c) (West 2010) (failure to orally inform the consumer of the right to cancel). Section 2Q, on the other hand, deals with contracts for home improvements, and a contractor violates this section if, for example, the contractor fails to complete the work and fails to return a down payment within 10 days of a written demand. See 815 ILCS 505/2Q (West 2010). A violation of either section constitutes a deceptive practice under the Act, but the elements that are required to prove the violations are different.

¶ 13 Sections 2 through 2III are therefore the substantive provisions of the Act because they set out the elements that must be proven in order to establish that a defendant violated the Act. Yet not just anyone is legally entitled to litigate a violation of the Act or to pursue a particular remedy, and this is where sections 7 and 10 come into play. In contrast to a cause of action, which is simply a specific legal claim for which a plaintiff seeks some remedy (see Black's Law Dictionary 214 (7th ed. 1999)), the concept of standing deals with whether a particular litigant "is entitled to have the court decide the merits of a dispute or a particular issue" (*Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 36). Unlike the substantive provisions of the Act, which deal with the elements of specific claims, sections 7 and 10a confer standing to litigate a violation of one of the substantive sections. Section 7 of the Act grants the Attorney General and State's Attorneys the right to litigate a violation of the Act and to obtain injunctive relief, civil penalties, or restitution for incidents of consumer fraud, provided that the elements in section 7 are met. See 815 ILCS 505/7(a) (West 2010) (stating that the Attorney General "*may bring* an action" if there is reason to believe that a defendant is or is about to violate the Act (emphasis added)). Similarly, section 10a grants private individuals the right to litigate a violation of the Act, but only provided that they can show that the defendant's violation of the Act harmed them personally. See 815 ILCS 505/10a(a) (West 2010) ("Any person who suffers actual damage *as a result of a violation* of this Act committed by any other person *may bring* an action against such person." (Emphases added.)).

¶ 14 To summarize the Act's structure, sections 7 and 10a deal with who may litigate a violation of the Act and when they may do so, and sections 2 through 2III deal with what a litigant must prove in order to show that the Act has been violated. Yet even though both sections 7 and 10a confer standing to litigate violations of the Act, they are written differently. In *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 373 (1998), the supreme court noted that the proximate-cause requirement originates in the statutory language of section 10a(a). See *id.* ("[S]ection 10(a) [*sic*] of the Act, which governs private causes of action under the statute, mandates that an individual's damages be 'a result of a violation of [the] Act.' [Citation.] Thus, this court requires that a successful claim *by a private individual* suing under the Act also demonstrate that the fraud complained of proximately caused plaintiff's injury." (Emphasis added.)). Section 7, however, does not contain a similar requirement. All that the plain language of section 7 requires in order for the Attorney General to have the standing to litigate a violation of the Act is that "the

Attorney General or a State's Attorney has reason to believe that [1] any person is using, has used, or is about to use any method, act or practice declared by [the] Act to be unlawful, and [2] that proceedings would be in the public interest." 815 ILCS 505/7(a) (West 2010). Because there is no "actual damages" requirement in section 7 as there is in section 10a(a), the Attorney General is not required to establish proximate cause in order to have standing to litigate a violation of the Act.

¶ 15 Thus, a private individual and the Attorney General may each file lawsuits against defendants who violate the Act, and they must each plead and prove the same elements in order to successfully establish that a defendant violated any particular provision. The only difference is in the standing requirements. Private individuals have standing to litigate a violation only if they have actual damages (see *Zekman*, 182 Ill. 2d at 373), but the Attorney General may litigate a violation and seek injunctive and other relief without that same requirement.

¶ 16 With these concepts in mind, we can more easily parse the claims at issue here and explain what it is that the Attorney General must allege in order to proceed in this case. The Attorney General seeks to allege three distinct claims against defendants: a violation of section 2, a violation of section 2B, and a violation of section 2Q. (We will not discuss the specific elements of section 2B or 2Q because they are not part of the certified question.) Just as any other plaintiff must do in order to plead a violation of section 2, the Attorney General must allege that (1) defendants committed a deceptive act or practice, (2) defendants intended for customers to rely on that deceptive act or practice, and (3) the deception occurred in the course of conduct involving trade or commerce. See *Connick*, 174 Ill. 2d at 501. In this case, if the Attorney General chooses to allege that the deceptive act was a misrepresentation, then she must also allege that defendants intended for consumers to rely on that misrepresentation. Finally, and unlike a private litigant, the Attorney General need not demonstrate that defendants' actions proximately harmed any consumers in order to establish her standing to litigate a violation of the Act and to seek injunctive and other relief as authorized in section 7.

¶ 17 Certified questions answered.

¶ 18 JUSTICE QUINN, specially concurring.

¶ 19 I completely concur with the majority in the answers given to the certified questions. I write separately because I am concerned with our supreme court's interpretation of section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/2 (West 2010)). Section 2 provides:

"Unfair methods of competition and unfair or deceptive acts or practices, *including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact,* or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 ILCS 510/2], approved August 5, 1965,

-7-

in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act [15 U.S.C. § 45]." (Emphasis added.) 815 ILCS 505/2 (West 2010).

¶ 20    As explained by the majority, the Attorney General argues that a section 2 claim that is based on deception, fraud, false pretense, false promise, or misrepresentation does not require evidence that a defendant intended that others rely upon the deception. Rather, section 2 only requires evidence that a defendant intend that others rely upon "the concealment, suppression or omission of [a] material fact." I agree with this interpretation. The requirement that a plaintiff must prove that a defendant intended that others rely upon an omission of a material fact would exclude instances where the omission was innocent. This interpretation is supported by our supreme court's holding in *Cripe v. Leiter*, 184 Ill. 2d 185, 191 (1998), that under the Act, "[t]he plaintiff need not establish any intent to deceive on the part of the defendant because even an innocent misrepresentation may be actionable under the Act. *Smith v. Prime Cable*, 276 Ill. App. 3d 843, 856 (1995)."

¶ 21    The majority correctly point out that in *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542 (1992), our supreme court held that "all a plaintiff need prove to establish a violation of the Act is: (1) a deceptive act or practice, (2) intent on the defendants' part that plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving trade or commerce. Significantly, the Act does not require actual reliance." As also pointed out by the majority, the supreme court cited this holding in *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996).

¶ 22    The Attorney General argues that the quoted language from *Siegel* does not apply to section 2 claims brought by the Attorney General's office. The Attorney General cites no case law for this proposition. However, citing *Connick*, the court in *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 373 (1998), held:

    "As we noted in our earlier discussion, section 10(a) [*sic*] of the Act, which governs private causes of action under the statute, mandates that an individual's damages be 'a result of the violation of [the] Act.' 815 ILCS 505/10a(a) (West 1992). Thus, this court requires that a successful claim by a private individual suing under the Act also demonstrate that the fraud complained of proximately caused plaintiff's injury. *Connick*, 174 Ill. 2d at 501; [citation]."

¶ 23    This language makes it clear that claims pursued by the Attorney General need not show that the alleged fraud proximately caused a person's injury. The quoted language does not support the Attorney General's assertion that her office need not prove intent on the defendant's part that a person rely on the alleged deception.

¶ 24    It may seem that the preceding discussion is analogous to the question, "How many angels can dance on the head of a pin?" After all, how difficult is it for the Attorney General to show "the defendant's intent that the plaintiff rely on the deception"? What else would a defendant under section 2 of the Act intend, if not reliance? Indeed, in the instant case, the Attorney General's claim alleged in part: "Using misrepresentations and other deceptive or

unfair practices, Diamond and the other defendants have *induced* consumers to enter into risky and unaffordable loans and contracts. *** Diamond also relied upon deceptive or unfair practices to *persuade* consumers to use defendants' home repair and remodeling companies." (Emphases added.) The use of the words "induced" and "persuade" demonstrates that the complaint alleges that defendant intended others to rely on its misrepresentations.

¶ 25 However, the instant complaint also alleged violations of the Act that in no way implicate any intent on the defendant's part that the plaintiff rely on defendant's deception. One of the claims alleged a violation of section 2B of the Act, which provides:

"It is an unlawful practice within the meaning of this Act for any person to

(a) Fail, before furnishing copies of the 'Notice of Cancellation' to the consumer, to complete the copies by entering the name of the person, the address of the person's place of business, the date of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the consumer may give notice of cancellation;

***

(c) Fail to inform each consumer orally, at the time he signs the contract or purchases or leases the goods or services, of his right to cancel[.]" 815 ILCS 505/2B (West 2010).

¶ 26 Another of the claims alleged a violation of section 2Q of the Act. Section 2Q of the Act provides, in pertinent part:

"(a) *** Any person who knowingly violates this Section commits an unlawful practice within the meaning of the Act ***.

***

(c) A person engaged in the business of home repair, as defined in Section 2(a)(1) of the Home Repair Fraud Act, who fails or refuses to commence or complete work under a contract or an agreement for home repair, shall return the down payment and any additional payments made by the consumer within 10 days after a written demand sent to him by certified mail by the consumer or the consumer's legal representative or by a law enforcement or consumer agency acting on behalf of the consumer." 815 ILCS 505/2Q (West 2010).

¶ 27 I cannot imagine how the Attorney General, or any plaintiff, could write a complaint that would include an allegation that the defendant intended that the consumer rely on defendant's failure to furnish a notice of cancellation (under section 2B) or that the defendant intended the consumer to rely on defendant's failure to commence or complete work or to refund the consumer's down payment and any additional payments within 10 days of a written demand (under section 2Q).

¶ 28 I note that none of the supreme court decisions cited by the parties or by the majority or by myself involved violations of section 2B or 2Q. Consequently, perhaps this court is requiring proof of an element that our supreme court would not require. However, any such parsing is more appropriately done by the supreme court, as this court lacks the authority not to follow the decisions of our supreme court. *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 551-52 (1983).