2022 IL App (1st) 201135-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
March 15, 2022

No. 1-20-1135

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS *ex rel.* KIMBERLY M. FOXX, State's Attorney of Cook County, Illinois, | ) ) ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County |
| v. | ) | |
| | ) | No. 17 CH 15927 |
| ANTHONY'S REMODELING, PAINTING & DECORATING, INC., ANTHONY TAGLIA, individually and as agent of Anthony's Remodeling, Painting & Decorating, Inc., and d/b/a Anthony's Remodeling, Painting & Decorating, and SHARON SIMEK, as agent of Anthony's Remodeling, Painting & Decorating, Inc. | ) ) ) ) ) ) ) ) | The Honorable Anna M. Loftus, Judge Presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1   *Held:*  Trial court's entry of summary judgment against defendants in the business of residential remodeling and exterior house painting on counts alleging violations of various consumer fraud laws is affirmed.

¶ 2       The plaintiff, the People of the State of Illinois *ex rel.* Kimberly M. Foxx, State's Attorney

of Cook County, sued the defendants, Anthony's Remodeling, Painting & Decorating, Inc. (ARPD Inc.), Anthony Taglia, and Sharon Simek for violations of various consumer fraud laws in their dealings with the customers of their exterior painting and residential remodeling business. After an order of default was entered against ARPD Inc., its liability was proven up and the trial court granted summary judgment against all defendants. The defendants appeal the trial court's entry of summary judgment against them. For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4      The summary judgment record is extensive and includes many affidavits detailing the defendants' business solicitation, contracting, communication, and performance of work with eleven customers between 2012 and 2019. Setting forth the details of the defendants' interactions with each of these customers would unnecessarily lengthen this order while adding little to our analysis of the issues on appeal. Instead, we summarize the allegations against the defendants, the bases of the trial court's ruling, and the summary judgment record as follows.

¶ 5      Taglia and Simek are in the business of providing residential home repair and remodeling services, particularly exterior house painting, in Oak Park and River Forest. Prior to 2014, they did business as an incorporated entity, ARPD Inc. That company was then dissolved, and they continued doing business as an unincorporated sole proprietorship called Anthony's Remodeling, Painting & Decorating. (We refer to this sole proprietorship as Anthony's Remodeling.) Taglia carried out the day-to-day operations of the business, while Simek was involved in its administrative, financial, and customer-service aspects.

¶ 6      Taglia and Simek sent all of the customer-affiants in this case (with the exception of one

instance in 2019)[1] a written estimate that promoted their business with the following language:

> "Anthony's Remodeling has been in the Oak Park/River Forest area for over 30 years and comes highly recommended from realtors and management companies in the area (ReMax, Gloor Realty, Century 21 Classic, just to name a few). Anthony has been a rehabber in the area for the last 25 years, therefore, having knowledge in all aspects of construction. Anthony's Remodeling is licensed in the Villages of Oak Park and River Forest and in excellent standing and have been for many years and am one of their most reputable, licensed contractors."

Each customer-affiant asserts that they relied favorably on this language in their decision to hire the defendants. However, this language is alleged to contain multiple misrepresentations that violate one or more consumer fraud laws.

¶ 7 The trial court found one such misrepresentation in the defendants' assertion that Anthony's Remodeling came "highly recommended" by specific realtors serving the Oak Park and River Forest areas. Attached to the plaintiff's motion for summary judgment were affidavits by the principals of Gloor Realty (Richard C. Gloor) and Century 21 Classic Properties (Frank Di Febo) in Oak Park stating that neither affiant ever received a request from the defendants for permission to assert that his company recommended the defendants' services in any manner. Taglia's certified discovery responses further assert that he had no documentation concerning approval by any of the named companies to represent that they "highly recommended" his services. Attached to the defendants' response to the motion for summary judgment was an unauthenticated e-mail, purportedly from Pamela Kenny of Gloor Realty stating that Taglia could use her as a reference,

---

[1] The 2019 proposal sent to customer-affiant Seth Franz stated only that "Anthony's Remodeling has been in the Oak Park/River Forest area for over 30 years. Anthony has been a rehabber in the area for the last 25 years, therefore, having knowledge in all areas of construction."

as well as a list of seven "realtor contacts." However, the record contains no counter-affidavit or deposition testimony establishing a foundation for these documents or otherwise addressing them.

¶ 8    The trial court found a second misrepresentation in the defendants' assertion to prospective customers that Anthony's Remodeling was licensed in both municipalities, was in excellent standing, had been for many years, and was one of their most reputable "licensed contractors." The defendants' verified answers to the complaint confirmed that no defendant was ever registered as a licensed contractor with the Villages of River Forest or Oak Park, with the exception of a one-year period between May 2015 and May 2016 in which Taglia was registered as a licensed contractor in Oak Park only. This was confirmed by uncontradicted affidavits by officials from the two municipalities.

¶ 9    The third misrepresentation found by the trial court involved the statement that the defendants had been in the home remodeling business for 25 to 30 years. Uncontradicted affidavits by officials from the Villages of Oak Park and River Forest state that, in the ten-year period prior to January 2020, Taglia or Anthony's Remodeling pulled only three permits to perform home repair or remodeling work, and Anthony's Remodeling was listed as a contractor on only two permits pulled by others. None of these five permits involved projects that passed final inspection by municipal officials. In their response to the motion for summary judgment, the defendants argued that this statement was not a misrepresentation, as they had been in business since 1988. They attached documents purportedly from the Better Business Bureau website and the Illinois Secretary of State website. They also argued that the majority of their work involved painting jobs that did not require pulling permits, that the subcontractors they hired pulled permits if necessary, and that Taglia had in fact pulled permits in other area municipalities. No affidavit or deposition testimony was filed to establish a foundation for these documents or factual assertions.

¶ 10 Separate from the above language in the defendants' written proposals, there are certain facts asserted by all of the customer-affiants that were found by the trial court to violate consumer fraud laws. First, each customer-affiant states that Taglia was physically present at the customer's residence and, in connection with the contract that resulted, each of which was valued at more than $25, the customer was not given any verbal or written information that he or she had the right to cancel the contract within three days. Second, each customer-affiant states that, in connection with the contract entered into with the defendants, each of which was valued at over $1000, the customer was not provided with a pamphlet including the statutory language required by section 20 of the Home Repair and Remodeling Act (815 ILCS 513/20 (West 2016)). None of these statements by the customer-affiants were rebutted by counter-affidavit or deposition testimony.

¶ 11 Next, the trial court found, with respect to Taglia only, that he had intentionally engaged in certain deceptive or unfair acts or practices in the conduct of trade or commerce. Among these were findings that he (1) fraudulently induced customers to enter into contracts that had no start or competition date by misrepresenting that projects would be placed on his "work schedule" to be commenced in the order that he received signed contracts and deposits; (2) used subjectively-determined humidity levels as an excuse for not performing the exterior-painting work called for by the contracts during the entirety of the outdoor-painting season in which those contracts were signed and into the following year's season as well; (3) used undue influence, coercion, and unfair practices to deny customers their right to cancel their contracts and obtain refunds of their deposits; (4) withheld performance, using weather as the pretext, and then required customers to pay additional money for him to proceed with the work he was already contracted to do; and (5) misrepresented to customers that work on their projects would be performed by his employees, not by subcontractors.

¶ 12    The uncontradicted affidavits of Rebecca Dahlstrom, Marie Jordan, James Pabin, Mary McSheffrey, and Sarah Miyata establish in summary that each was a customer who entered into a contract with ARPD Inc. or Anthony's Remodeling for exterior painting of a house in Oak Park between 2012 and 2017. In each case, the defendants never performed the work for which the customer had contracted. Most of these customer-affiants detail communication in which Taglia said effectively that their project would be placed onto his work schedule and performed in a timely manner once his earlier-scheduled work was completed. Each customer-affiant also explains the details of their follow-up inquires with Taglia about why work was not proceeding and the fact that Taglia would repeatedly blame weather conditions, specifically heat, humidity, and the chance of rain, for the fact that work was not being performed. Often, Taglia would then promise the customer that work on his or her house would commence within a matter of days or weeks, which would then not occur. Many such communications are documented in letters or e-mails from Taglia to the respective customer, attached to that customer's affidavit.

¶ 13    In Dahlstrom's case, she demanded a refund of her $5750 deposit from Taglia when work for which she had contracted in September 2012 had not started by June 2013. Jordan and Pabin both entered into contracts with Anthony's Remodeling in February 2015, with Pabin demanding a refund of his $4500 deposit when work had not commenced by July 2016 and Jordan demanding a refund of her $1000 deposit when work had not commenced by September 2016. McSheffrey demanded a refund of her $2000 deposit from Taglia when the work for which she had contracted in June 2015 had not been performed by November 2015. Miyata demanded a refund of her $2500 deposit from Taglia when the work for which she had contracted in May 2017 had not commenced by September 2017, after Taglia had promised her that he would meet her deadline of completing the work by August. In each instance, Taglia never refunded the customer-affiant's deposit. Jordan,

McSheffrey, and Miyata all aver that Taglia responded that there was no deadline for completing the work called for under their contracts. Miyata also stated that Taglia became "verbally aggressive and hostile" when she asked for a refund and accused her of trying to cheat him out of business for which they had a contract.

¶ 14    The uncontradicted affidavit of Deanna Herman states that in June 2015 she entered into a contract with Anthony's Remodeling for the painting of her home for $9000 and paid half as a deposit. No work was done until mid-October 2015, when workers arrived and scraped the paint off her house for three days. Work then stopped for a week, and Taglia told her that the only way he could guarantee that her house would be repainted before next spring was if she paid his workers directly at $700 per day for six days of work. Herman agreed. However, when she later tried to express her concern to Taglia that the work was not going to be completed in six days and that she would end up paying his workers more than the $9000 called for under the contract, Taglia did not respond to her messages. Feeling she had no choice, Herman ultimately paid Taglia's workers an amount that was more than $2300 over the contract price to complete the work. When she demanded Taglia refund her the difference, Taglia refused to do so.

¶ 15    The uncontradicted affidavit of Kelly Koennecke establishes that she entered into a contract with Anthony's Remodeling in March 2016. Prior to entering into the contract, Taglia told her that he did not use subcontractors to perform his exterior painting work. Koennecke relied on this statement in deciding to hire Anthony's Remodeling. On May 31, 2016, a man arrived at her house, identified himself as a subcontractor of Anthony's Remodeling, and stated that he could not do the job for the contract price. Later that day, Taglia sent Koennecke an e-mail about additional work that needed to be done on her house by his subcontractor and that this would increase her costs under the contract by about $3000. Koennecke responded that she wanted to cancel the contract

and receive a refund of her $1875 deposit. Taglia refused and never provided her with a refund.

¶ 16    The trial court made additional findings that Taglia had engaged in deceptive acts or practices with respect to two specific customers, Christopher Chapman and Seth Franz. In Chapman's case, the trial court found that Taglia had represented to Chapman that Anthony's Remodeling used workers who were certified by the EPA or otherwise trained in lead paint removal, but then he assigned an unqualified worker to Chapman's project who performed partial and defective work, thereby creating a health hazard for Chapman's family. In Franz's case, the trial court found that Taglia (1) misrepresented that he had extensive experience performing architect-led home remodeling and porch construction projects but then assigned an unqualified and unsupervised subcontractor to perform Franz's project, resulting in incomplete and shoddy work that failed inspections, requiring Franz to hire a different contractor to tear down the partially-built structure and complete the job; (2) falsely promised to perform Franz's project consistent with the architectural specifications and code, but then failed to do so after taking receipt of Franz's 50% deposit and tearing down the existing porch, requiring Franz to spend significant sums of money beyond the contract price. We set forth the significant facts from the uncontradicted affidavits of Chapman and Franz in paragraphs 33 and 34 of the analysis below.

¶ 17    Upon granting summary judgment against the defendants, the trial court permanently enjoined ARPD Inc. from reinstatement as a corporation in Illinois, permanently enjoyed Taglia and Simek from having any controlling involvement in a home repair and remodeling business, and rescinded the defendants' contracts with the customers involved in this case. The court also entered a money judgment against Taglia and Simek, which consisted of $40,539.69 in restitution payable to ten of its customers, for which Taglia and Simek are jointly and severally liable, as well as $150,000 in civil penalties, of which $125,000 was assessed against Taglia alone and $25,000

was assessed against Simek alone. This appeal then followed.

¶ 18                                     II. ANALYSIS

¶ 19        On appeal, the defendants challenge the entry of summary judgment against them, arguing

that genuine issues of material fact exist. The purpose of summary judgment is not to try a question

of fact but to determine whether one exists. *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 14.

Summary judgment is properly granted where "the pleadings, depositions, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West

2020). Review of an order entering summary judgment is *de novo*. *Lewis*, 2020 IL 124107, ¶ 15.

¶ 20        The defendants argue on appeal that genuine issues of material fact exist about (1) how many

permits they pulled in the prior ten years and how the pulling of permits reflects on their statements

about Taglia's experience as a contractor; (2) the number of years that Taglia or Anthony's

Remodeling has been in business and whether the statement that it had been in business for 25 to

30 years was a misrepresentation; (3) whether realtors at Gloor Realty, Century 21 Classic, or

ReMax actually recommended the defendants' services; (4) the extent to which humidity, chances

of rain, and other weather conditions were a legitimate excuse for not performing exterior painting

services for customers during the time periods at issue; (5) their maintenance of formal "work

schedules" for customers' projects, particularly in light of the effect of weather on their ability to

complete exterior painting projects of varying sizes; (6) whether they completed any jobs within

six months or one year of customers signing contracts or paying deposits; and (7) whether they

ever issued refunds to any customers and whether refunds were truly owed to customers

(specifically Chapman) in this case.

¶ 21        We do not need to address the substance of these specific arguments raised by the defendants

because of their failure to submit the facts supporting them in a form of evidence that could be considered by the trial court on a motion for summary judgment. In this case, as set forth in the background above, the plaintiff's motion for summary judgment was supported with numerous affidavits from customers of the defendants, each of which provided significant factual detail of their respective transactions involving the defendants. By contrast, the defendants filed no counter-affidavits or depositions with their response to the motion for summary judgment. Instead, they simply attached several documents as exhibits to their response brief, such as print-outs of Internet websites and e-mails, insurance documents, a "list of realtor contacts," a list of jobs completed within six months of contracting, and invoices for paint supplies.

¶ 22    The trial court properly declined to consider the documents attached to the defendants' response brief because the defendants did not submit an affidavit establishing a foundation for them. The Code of Civil Procedure requires a trial court to make its summary judgment determination based exclusively upon "the pleadings, depositions, and admissions on file, together with the affidavits." 735 ILCS 5/2-1005(c) (West 2020). When ruling on a motion for summary judgment, a trial court can only consider evidence that would be admissible at trial, and basic rules of evidence require that a party must establish the proper foundation for the introduction of a document into evidence if it wishes to rely on that document in summary judgment proceedings. *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 384 (2008). To establish a proper foundation for a document, the party must present evidence showing that the document is what it purports to be. *Id.* A party can authenticate a document by providing an affidavit or presenting the deposition testimony of a witness who has sufficient knowledge of the document. *Id.* However, a party cannot show the existence of an issue of fact merely by attaching unauthenticated documents to a brief. Here, the defendants failed to provide any affidavit,

deposition testimony, or other admissible evidence to authenticate the documents attached to their response brief. Because their failure to do so, the trial court properly declined to consider these documents in determining whether a genuine issue of material fact existed in this case.

¶ 23     More significantly, though, it is the defendants' failure to submit any counter-affidavits in response to the detailed affidavits supporting the plaintiff's motion for summary judgment that precludes them from demonstrating the existence of an issue of fact. In the face of supporting affidavits submitted by a party moving for summary judgment, the nonmovant must submit counter-affidavits (or rely on depositions or admissions) in order to raise an issue of fact sufficient to survive summary judgment. *Sacramento Crushing Corp. v. Correct/All Sewer, Inc.*, 318 Ill. App. 3d 571, 575 (2000). The opponent of a properly supported motion for summary judgment does not need to establish his or her claim or defense to defeat the motion but must present some factual basis that would arguably entitle him or her to judgment. *Barber-Colman Co. v. A & K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1071 (1992). However, the failure to file counter-affidavits does not necessarily mean that the motion is automatically granted. *Id.* Rather, the consequence of the defendants' failure to file counter-affidavits in this case is that the uncontested facts set forth in the sworn affidavits filed by the plaintiff must be accepted as true for purposes of deciding the motion for summary judgment. *Sacramento Crushing Corp.*, 318 Ill. App. 3d at 576.

¶ 24     Having found that the defendants have not shown that a genuine issue of material fact exists, we proceed to the question of whether the uncontradicted facts set forth in the affidavits filed by the plaintiff (together with the pleadings and admissions on file) entitle the plaintiff to judgment as a matter of law on the consumer fraud claims. The defendants have raised no argument on appeal that the undisputed facts found to exist by the trial court do not entitle the plaintiff to judgment as a matter of law. Accordingly, we could consider any argument on this point to be forfeited. See

Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued in appellant's opening brief are forfeited). However, as the issue was addressed by the plaintiff, we will proceed to consider it.

¶ 25    Section 7 of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) authorizes a State's Attorney to bring an action in the public interest seeking an injunction against a defendant believed to be using a method, act, or practice declared to be unlawful by the Consumer Fraud Act. 815 ILCS 505/7(a) (West 2016). Most of the allegations against the defendants here involve section 2 of the Consumer Fraud Act, which declares unlawful any unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact, as well as the use or employment of any practice described in section 2 of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2 (West 2016)), in the conduct of any trade or commerce. 815 ILCS 505/2 (West 2016). In turn, section 2 of the Uniform Deceptive Trade Practices Act prohibits a person in his or her business, vocation, or occupation from "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have" (815 ILCS 510/2(a)(5) (West 2016)); "advertis[ing] goods or services with intent not to sell them as advertised" (*id.* § 2(a)(9)); or "engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding" (*id.* § 2(a)(12)).

¶ 26    The elements that must be proved to establish a violation of section 2 are (1) that the defendants committed a deceptive act or practice, (2) that the defendants intended for consumers to rely on that deceptive act or practice, and (3) that the deception occurred in the course of conduct

involving trade or commerce. *People ex rel. Madigan v. United Construction of America*, 2012 IL App (1st) 120308, ¶ 16. The requisite intent that must be shown is that the defendants intended that the consumer rely on the information that the defendants gave to the consumer, as opposed to an intent to deceive. *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 655 (2001).

¶ 27 Having reviewed all of the facts set forth in the uncontested affidavits of the defendants' customers, we conclude that all of elements necessary to establish a violation of section 2 are satisfied. There is no dispute that the alleged acts of deception involved trade or commerce. See 815 ILCS 505/1(f) (West 2016). As to the statements in the defendants' written proposals to prospective customers that Anthony's Remodeling "comes highly recommended" by specific realty companies in the Oak Park and River Forest area, that Taglia had been a "rehabber in the area for the last 25 years" and therefore had knowledge in all aspects of construction, and that Anthony's Remodeling had been licensed for "many years" in Oak Park and River Forest and was a "licensed contractor," it is clear from the context that these were factual statements upon which the defendants intended for customers to rely in deciding whether to hire the defendants to provide residential painting or remodeling services. And, although actual reliance is not a required element of the claim, all of the customers' affidavits establish that the defendants' customers did in fact rely upon these statements when deciding to hire the defendants.

¶ 28 The pleadings, admissions, and uncontradicted affidavits further show that each of these statements contains an aspect of misrepresentation. First, the affidavits of the principals of two of the realty companies by which the defendants stated they were "highly recommended" established that these companies never in fact recommended the defendants' services in any way. Second, the undisputed evidence showed that the defendants had not been licensed for "many years" in Oak Park and River Forest and were not "licensed contractors" in those two municipalities. Rather, the

undisputed evidence was that none of the defendants were ever registered as licensed contractors with the Villages of Oak Park or River Forest prior to the filing of the complaint, with the exception of a one-year period in Oak Park only. Third, the uncontradicted affidavits submitted by officials from the two municipalities showed that, despite the defendants' representation of Taglia as a "rehabber in the area for the last 25 years" with resulting knowledge in all areas of construction, he had pulled or been named as a contractor on no more than five permits in the previous ten years, and none of those permits involved projects that had passed final inspection. We agree with the trial court that these were misrepresentations made by the defendants to consumers in violation of section 2 of the Consumer Fraud Act. *Id.* § 2.

¶ 29     Additionally, the undisputed evidence showed other violations of the Consumer Fraud Act with respect to the information required by statute that the defendants failed to provide to the customers with whom they entered into contracts. First, the uncontradicted facts set forth in the defendants' customers' affidavits showed that Taglia had come to each customer's respective residence, entered into a contract in excess of $25, and failed to orally inform that customer of the right to cancel the contract or to provide a written "Notice of Cancellation" informing the customer of the right to cancel the contract within three days. This is a violation of section 2B of the Consumer Fraud Act, which requires the oral and written provision of this information concerning the right to cancel. *Id.* § 2B. Second, the uncontradicted facts set forth in the customers' affidavits showed that they had entered into a contract with the defendants valued at over $1000 and were not provided with the "Home Repair: Know Your Customer Rights" pamphlet that included the language required by section 20 of the Home Repair and Remodeling Act (815 ILCS 513/20 (West 2016)). The failure to provide this pamphlet is a violation of section 20(a) of the Home Repair and Remodeling Act (*id.* § 20(a)), and any violation of the Home Repair and Remodeling Act also

constitutes a violation of the Consumer Fraud Act. *Id.* § 35(b).

¶ 30　　　We also agree with the trial court that the uncontradicted facts in the affidavits by the defendants' customers establish additional ways in which Taglia engaged in unfair acts or practices in violation of section 2 of the Consumer Fraud Act (815 ILCS 505/2 (West 2016)). Illinois courts determine whether conduct is "unfair" under the Consumer Fraud Act on a case-by-case basis. *Dubey v. Public Storage, Inc.*, 395 Ill. App. 3d 342, 354 (2009). The requirements for evaluating unfair conduct are (1) whether the practice offends public policy, (2) whether it is immoral, unethical, oppressive, or unscrupulous, and (3) whether it causes consumers substantial injury. *Aliano v. Ferriss*, 2013 IL App (1st) 120242, ¶ 25. All three criteria do not need to be satisfied, as a practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. *Dubey*, 395 Ill. App. 3d at 354.

¶ 31　　　We conclude that this standard of establishing unfair conduct is satisfied based upon the uncontradicted facts in the customers' affidavits. Those uncontradicted affidavits show that Taglia routinely entered into contracts that contained no commencement date, while explicitly stating or implying to customers that he would commence and complete work on their projects in a timely manner once he had finished work on previously-scheduled projects. Despite these statements, he repeatedly failed to commence any work, or at least any substantial part of the work, for the entirety of the season in which outdoor painting can be done in northern Illinois and well into the following year's season. In response to repeated inquiries by customers about why work was not being done, Taglia blamed all forms of weather, particularly humidity or chances of precipitation, as a reason why work could never be performed for long periods of time. When customers sought to cancel contracts in situations where Taglia had failed to commence work for at least the entirety of one outdoor painting season, Taglia refused to return customers' deposits and cancel their contracts.

As a basis for refusing to cancel contracts or return deposits, Taglia repeatedly cited the absence of a completion date in his contracts and the weather during the previous painting season, and he pledged an ongoing willingness to complete the work at some point in the future (but then did not do so). No customer who provided an affidavit in this case was ever provided with a refund of his or her deposit. Several customers averred that Taglia engaged in threatening behavior toward them when they requested refunds of their deposits. We hold that these actions constitute unfair acts or practices in the conduct of trade or commerce under section 2 of the Consumer Fraud Act. 815 ILCS 505/2 (West 2016).

¶ 32    We also find that the standard of showing unfair acts or practices is satisfied by the uncontradicted affidavits of several customers (*e.g.*, Herman, Koennecke, and Franz) who averred that Taglia required or attempted to require them to pay additional money for labor or materials beyond the agreed-upon contract price for work to proceed or to be performed in a timely manner. In Herman's case, this occurred after a long delay and at the end of the outdoor painting season when the existing paint was scraped off her house, giving her no choice but to pay extra to have the work done before winter.

¶ 33    With respect to Chapman, we agree with the trial court that the undisputed facts demonstrate deceptive or unfair acts or practices by Taglia. Chapman's uncontradicted affidavit establishes that, prior to their entry into a contract, Taglia specifically stated to Chapman that he used workers who were EPA-certified and trained in remediation of lead paint and that he would supervise their work. Five months later, Taglia sent a single worker to Chapman's house, who failed to follow EPA guidelines by dry-scraping lead paint from his house. Taglia did not supervise that worker. When Chapman thereafter sought to cancel the contract because of the worker's improper practices for removing lead paint, Taglia made threats that Chapman understood as threats of violence and

insisted on completing the work. Thereafter, the worker sent by Taglia continued to work in a way that failed to conform to EPA guidelines for safe lead paint removal, by power washing stucco and dry-scraping lead paint. The worker also left lead paint chips all over the roof and ground, creating a safety hazard for Chapman's family, and failed to complete all work called for under the contract. Chapman was thereafter required to hire additional contractors to clean up the lead-paint chips and to complete other work that the worker sent by Taglia failed to perform.

¶ 34    Finally, with respect to Franz, we again agree with the trial court that the undisputed facts demonstrate deceptive or unfair acts or practices by Taglia. According to Franz's uncontradicted affidavit, Taglia told Franz prior to their entry into a contract that he had been specializing in porch construction for over 30 years and had worked on many architect-led home remodeling projects. They then entered into a contract for $14,000 in total labor and materials, of which $1000 was for materials. That contract specifically provided that materials were "guaranteed to be as specified" and that work would be "performed in accordance with the specifications submitted for the above work." The architect then drafted plans calling for the use of cedar wood for most of Franz's porch. Although Franz specifically asked Taglia prior to the finalization of the architectural plans to confirm that they reflected the project "which you generated your $14K estimate off of," Taglia waited until after the plans had been approved by the municipality and Franz's existing porch had been demolished to tell Franz that he would not use cedar wood to construct the porch unless Franz agreed to pay extra for it. Franz initially refused but ultimately paid more than $3000 over the contract price so that the subcontractor sent by Taglia could purchase cedar wood. Thereafter, Taglia continued to demand that Franz pay for additional materials above the $1000 cost that the contract contemplated for materials. Because of this, Franz terminated the contract. Franz then asked an inspector from the Village of Oak Park to conduct an inspection of the partially-built

porch and discovered that Taglia had failed to obtain two required inspections of the work that his subcontractor had partially completed, which required much of the partially-built porch to be dismantled. Franz hired Jacknow Construction to complete the work in accordance with the architectural plans. Jacknow provided Franz with a report setting forth various ways in which the work that had been partially completed by Taglia's subcontractor was shoddy, including the fact that interior wood had been used instead of exterior treated wood to build most of the porch. Thus, Franz was required to pay $31,211 to Jacknow to tear down the entire structure that Taglia's subcontractor had partially completed and reconstruct it in accordance with the architectural plans. We hold that these facts as set forth in the uncontradicted affidavit of Franz satisfy the standards for demonstrating that Taglia engaged in unfair or deceptive acts or practices with respect to consumers and thereby violated of section 2 of the Consumer Fraud Act. *Id.*

¶ 35                                   III. CONCLUSION

¶ 36        For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 37        Affirmed.